IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Bid Protest)

|  |  |  |
|---|---|---|
| | ) | |
| BLUE WATER AUTONOMY, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Consol. No. 26-936 |
| | ) | (Judge Hadji) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HII UNMANNED SYSTEMS, INC., *et al.*, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| | ) | |

## DEFENDANT'S RULE 12(B)(1) MOTION TO DISMISS FOR LACK OF JURISDICTION

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

CORINNE A. NIOSI
Of Counsel:                                        Assistant Director

GWENDOLYN IACI                      DOUGLAS G. EDELSCHICK
Supervisory Associate Counsel       Senior Trial Counsel
EMILY RUBINO                            NATALEE A. ALLENBAUGH
Attorney Advisor                          Trial Attorney
BENJAMIN DEARDEN                  Commercial Litigation Branch
Attorney Advisor                          Department of Justice
NAVSEA Office of Counsel            P.O. Box 480, Ben Franklin Station
1333 Isaac Hull Avenue, Bldg 197   Washington, DC 20044
Washington Navy Yard, D.C. 20376  Tel:  (202) 353-9303

August 10, 2026                           Attorneys for Defendant United States

**TABLE OF CONTENTS**

**Page:**

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ........................................................................................................................... 1

STATEMENT OF THE ISSUE ....................................................................................................... 2

STATEMENT OF THE CASE ........................................................................................................ 2

I.    Factual Background ............................................................................................................. 2

II.   History Of DOD's Other Transaction Authority ................................................................ 3

      A.   DOD's Limited Other Transaction Authority Between 1989 and 2015 ..................... 3

      B.   DOD's Expanded Other Transaction Authority Since 2015 ...................................... 5

      C.   DOD's Current OT Authority .................................................................................... 9

ARGUMENT ................................................................................................................................ 10

I.    The Protest Should Be Dismissed For Lack Of Jurisdiction ............................................. 10

      A.   Standard Of Review ................................................................................................ 10

      B.   The Court's Jurisdiction Is Limited ......................................................................... 11

      C.   The Court Does Not Possess Bid Protest Jurisdiction To Entertain Challenges To
           Non-Procurement Actions ....................................................................................... 12

           1.   *Hymas* Requires This Court To Harmoniously Construe The Scope Of Its
                Bid Protest Jurisdiction Over Procurements And Statutes Authorizing Non-
                Procurements ................................................................................................... 13

           2.   Congress Granted The Navy OT Authority For Non-Procurement Actions ...... 17

           3.   Congress Legislated Against The Backdrop Of Existing Statutes That Authorized
                Non-Procurements When Creating Bid Protest Jurisdiction ............................. 21

           4.   The Court Should Follow *Hymas* And Dismiss This Protest ......................... 22

      D.   This Court's Decision In *Telesto* Further Supports Dismissal Of These Protests ..... 24

      E.   Other Decisions By This Court Are Unpersuasive And Inconsistent With *Hymas* ..... 27

CONCLUSION ............................................................................................................................. 31

## TABLE OF AUTHORITIES

**Cases:**                                                                                          **Page(s):**

*Aectra Refining & Mktg., Inc. v. United States*, 565 F.3d 1364 (Fed. Cir. 2009)..............15, 21, 22

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)...............................18

*Bader v. United States*, 97 F.4th 904 (Fed. Cir. 2024) ......................................................16

*Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007) ............................ 26-27

*Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573 (Fed. Cir. 1993) ...............................10

*Cleveland Assets, LLC v. United States*, 883 F.3d 1378 (Fed. Cir. 2018) ....................................24

*Cleveland Assets, LLC v. United States*, 897 F.3d 1332 (Fed. Cir. 2018) ....................................24

*CMS Contract Mgmt. Servs. v. United States*, 745 F.3d 1379 (Fed. Cir. 2014) ............................14

*Distributed Solutions, Inc. v. United States*, 539 F.3d 1340 (Fed. Cir. 2008) ...............................13

*Eco Tour Adventures, Inc. v. United States*, 114 Fed. Cl. 6 (2013)................................................28

*Ex Parte McCardle*, 74 U.S. (7 Wall.) 506 (1869) ........................................................................10

*Frankel v. United States*, 842 F.3d 1246 (Fed. Cir. 2016)..............................................................12

*Hercules Inc. v. United States*, 516 U.S. 417 (1996) ......................................................................11

*Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573 (Fed. Cir. 1988) ......................11

*Hydraulics Int'l Inc. v. United States*, 161 Fed. Cl. 167 (2022) .......................................28, 29, 31

*Hymas v. United States*, 810 F.3d 1312, 1316-17 (Fed. Cir. 2016)....................................... *passim*

*Independent Rough Terrain Center v. United States*, 172 Fed. Cl. 250 (2024)........... 20, 25, 28-30

*Kellogg Brown & Root Servs. v. United States*, 117 Fed. Cl. 764 (2014) ....................................13

*MacLean v. United States*, 454 F.3d 1334 (Fed. Cir. 2006) ..........................................................11

*MD Helicopters Inc. v. United States*, 435 F. Supp. 3d 1003 (D. Ariz. 2020) .............................28

*Murphy v. United States*, 222 Ct. Cl. 685 (1980) ..........................................................................11

*Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479 (1998).................. 20-21

*Progress for Bakersfield Veterans, LLC v. United States*, 158 Fed. Cl. 574 (2022) ....................24

# TABLE OF AUTHORITIES

**Cases (continued):**                                                                        **Page(s):**

*Protect Lake Pleasant LLC v. McDonald*, 609 F. Supp. 2d 895 (D. Ariz. 2009) .................... 28-29

*Raytheon Co. v. United States*, 175 Fed. Cl. 281 (2025) .............................................27, 28, 29, 31

*Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238 (Fed. Cir. 2010) ........12, 14, 23, 28

*Safeguard Base Ops., LLC v. United States*, 989 F.3d 1326 (Fed. Cir. 2021)..............................28

*Smith v. Orr*, 855 F.2d 1544 (Fed. Cir. 1988)............................................................................11

*Space Exploration Techs. Corp. v. United States*, 144 Fed. Cl. 433 (2019).................................20

*Space Exploration Techs. Corp. v. United States*, No. 2:19-cv-07927, 2020 U.S. Dist.
    LEXIS 245693, 2020 WL 7344615 (C.D. Cal. Sept. 24, 2020) .................................28, 29

*Suramerica de Aleaciones Laminadas, C.A. v. United States*, 966 F.2d 660 (Fed. Cir. 1992) .....15

*Taylor v. United States*, 303 F.3d 1357 (Fed. Cir. 2002)..............................................................10

*Telesto Group, LLC v. United States*, 176 Fed. Cl. 711 (2025)................................................ 24-31

*Tender Years Learning Corp. v. United States*, 134 Fed. Cl. 336 (2017).....................................28

*United States v. King*, 395 U.S. 1 (1969)......................................................................................28

*United States v. Sherwood*, 312 U.S. 584 (1941).........................................................................11

*United States v. Testan*, 424 U.S. 392 (1976)...............................................................................11

*VFA, Inc. v. United States*, 118 Fed. Cl. 735 (2014) ...................................................................13

**Statutes:**

6 U.S.C. § 391.................................................................................................................................3

10 U.S.C. § 1092.............................................................................................................................8

10 U.S.C. § 2371.......................................................................................................3, 4, 5, 7, 8, 17

10 U.S.C. § 2371b..............................................................................................................5, 6, 7, 8

10 U.S.C. § 4001................................................................................................9, 12, 19, 20, 22, 23

10 U.S.C. § 4021..................................................................................................9, 17, 19, 20, 22, 23

10 U.S.C. § 4021 note.....................................................................................................................8

**TABLE OF AUTHORITIES**

**Statutes (continued):**                                                                **Page(s):**

10 U.S.C. § 4022 ............................................................................................................ *passim*

28 U.S.C. § 604 ................................................................................................................... 21

28 U.S.C. § 1346 ................................................................................................................. 11

28 U.S.C. § 1491 ........................................................................................................... *passim*

31 U.S.C. § 6301 ................................................................................................................. 20

31 U.S.C. § 6303 ................................................................................................................. 20

31 U.S.C. § 6304 ................................................................................................................. 20

31 U.S.C. § 6305 ................................................................................................................. 20

41 U.S.C. § 111 ................................................................................................. 13, 14, 29, 30

41 U.S.C. § 3301 ................................................................................................................. 18

42 U.S.C. § 247d-7e .............................................................................................................. 3

42 U.S.C. § 7256 ................................................................................................................... 3

49 U.S.C. § 106 ..................................................................................................................... 3

49 U.S.C. § 5312 ................................................................................................................... 3

51 U.S.C. § 20113 ............................................................................................................ 3, 21

Admin. Dispute Resolution Act, Pub. L. No. 104-320, 110 Stat. 3874 (1996) ............................. 21

Competition in Contracting Act, Pub. L. No. 98-369, 98 Stat. 1175 (1984) ......... 13-15, 18, 21, 22

Court Interpreters Act of 1978, Pub. L. No. 95-539, 92 Stat. 4043 (1978) ................................... 21

Federal Grant and Cooperative Agreement Act, Pub. L. No. 95-224,
92 Stat. 3 (1978) ............................................................................................... 9, 13, 18-22

National Aeronautics and Space Act of 1958, Pub. L. No. 85-568, 72 Stat. 430 (1958) .......... 3, 21

1990-1991 NDAA, Pub. L. No. 101-189, 103 Stat. 1352 (1989) ........................... 3, 17, 18, 21, 23

1992-1993 NDAA, Pub. L. No. 102-190, 105 Stat. 1290 (1991) .................................................. 4

1994 NDAA, Pub. L. No. 103-160, 107 Stat. 1547 (1993) ........................................................... 4

## TABLE OF AUTHORITIES

**Statutes (continued):** **Page(s):**

1997 NDAA, Pub. L. No. 104-201, 110 Stat. 2422 (1996) .............................................................4

2002 NDAA, Pub. L. No. 107-107, 115 Stat. 1012 (2001) ............................................................4

2016 NDAA, Pub. L. No. 114-92, 129 Stat. 726 (2015) ...............................................5, 7, 18, 21

2018 NDAA, Pub. L. No. 115-91, 131 Stat. 1283 (2017) ............................................................8

2023 NDAA, Pub. L. No. 117-263, 136 Stat. 2395 (2022) ..........................................................8

**Legislative History:**

H.R. Rep. No. 101-331 (1989).......................................................................................................4

H.R. Rep. No. 114-102 (2015)................................................................................................... 6-7

H.R. Rep. No. 114-270 (2015)................................................................................................7, 19

S. Rep. No. 95-449 (1977) ..........................................................................................................20

S. Rep. No. 101-81 (1989) ........................................................................................................ 3-4

S. Rep. No. 102-113 (1991) ....................................................................................................4, 19

S. Rep. No. 109-69 (2005) ............................................................................................................5

S. Rep. No. 114-49 (2015) ......................................................................................................6, 19

S. Rep. No. 115-125 (2017) .................................................................................................7, 8, 19

S. Rep. No. 117-130 (2022) ...........................................................................................................8

S. Rep. No. 118-188 (2024) .....................................................................................................9, 19

**Other Authorities:**

John Cibinic, Jr. *et al.*, *Formation of Government Contracts* (5th ed. 2023) ...............................16

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2005) ..............................................22

RCFC 12 ...................................................................................................................................1, 10

*Transferring certain functions from the Department of Defense to the National
    Aeronautics and Space Administration*, Exec. Order No. 10783 of Oct. 1, 1958,
    23 Fed. Reg. 7,643 (Oct. 3, 1958)......................................................................................3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Bid Protest)

| | |
|---|---|
| BLUE WATER AUTONOMY, INC., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Consol. No. 26-936 |
| | ) (Judge Hadji) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| HII UNMANNED SYSTEMS, INC., *et al.*, | ) |
| | ) |
| Defendant-Intervenors. | ) |
| | ) |

## DEFENDANT'S RULE 12(B)(1) MOTION TO DISMISS FOR LACK OF JURISDICTION

Pursuant to Rule 12(b)(1) of the Court's Rules (RCFC), defendant, the United States,

respectfully requests that the Court dismiss the complaints for lack of subject matter jurisdiction.

## INTRODUCTION

Plaintiffs Blue Water Autonomy, Inc. (Blue Water) and Saildrone, Inc. (Saildrone)

(collectively, plaintiffs) commenced these bid protests purporting to challenge evaluations by the

Department of the Navy (Navy) that their respective prototype proposals for medium unmanned

surface vessels (MUSVs) were not technically acceptable under Request for Prototype Proposals

No. N00024-26-R-6326 (the RPP), and thus did not qualify for testing under a prototype other

transaction (OT) agreement (OTA) pursuant to 10 U.S.C. § 4022.  The Navy selected seven other

proposals for prototype testing under OTs.  As delineated by statute, prototype OTs are *not*

procurements, and this Court's bid protest jurisdiction is limited to procurements.  Accordingly,

this Court does not possess jurisdiction and should dismiss the complaints.

STATEMENT OF THE ISSUE

Whether the Court possesses jurisdiction under 28 U.S.C. § 1491(b)(1) to entertain these bid protests concerning technical evaluations of proposals for prototype OTs.

STATEMENT OF THE CASE

I.    Factual Background

In early 2026, the Navy's Portfolio Acquisition Executive for Robotic and Autonomous Systems (PAE RAS) announced that it was "seeking to accelerate the design, development, and demonstration of" MUSVs. AR 251. These "MUSVs must provide autonomous carrying capacity of containerized payloads while possessing the attributes defined" by the Navy. *Id.* In the RPP, the Navy stated that the "primary purpose of this solicitation is to award a prototype other transaction (OT) agreement pursuant to 10 U.S.C. § 4022 to one or more offerors to perform an MUSV autonomy and vessel performance test." *Id.* The RPP explained that the competitive process consists of two phases. *Id.* In phase 1, companies may submit proposals in response to the RPP, and the Navy will evaluate them against criteria set forth in the RPP. *Id.* In phase 2, companies whose proposals are evaluated to be of merit may be selected for potential award of a prototype OT and invited to negotiate the terms of a prototype OT agreement governing the prototype project. *Id.* The Navy will not pay companies for costs associated with phases 1 and 2. *Id.* If a company passes phases 1 and 2 and successfully negotiates a prototype OT agreement, the Navy will provide $15 million in funding for prototype testing. AR 251-52. The RPP further states: "In accordance with 10 U.S.C. § 4022(f), a transaction entered into under this section for a prototype project may provide for the award of a follow-on production contract or transaction to the successful prototype project participants." AR 257. If any prototype MUSVs are successful, however, the RPP indicates that the Navy has not yet decided whether to acquire MUSVs or to use a services model. AR 257-58.

The Navy selected seven of 25 proposals in prototype phase 1 to move on to prototype phase 2, but plaintiffs were not among them.  AR 1575, 1577.  These protests followed.

II.     History Of DOD's Other Transaction Authority

Congress has conferred upon many Federal agencies express authority to conduct non-procurements using OTs.  *E.g.*, 10 U.S.C. § 4022 (Department of Defense (DOD)); 6 U.S.C. § 391 (Dep't of Homeland Sec.); 42 U.S.C. § 247d-7e (Dep't of Health and Human Servs.); 42 U.S.C. § 7256 (Dep't of Energy); 49 U.S.C. § 5312 (Dep't of Transp.); 49 U.S.C. § 106(l)(6) (Fed. Aviation Admin.); 51 U.S.C. § 20113 (Nat'l Aeronautics and Space Admin. (NASA)).  Agencies have been using OTs pursuant to statutory authority since at least 1958.[1]  *See* National Aeronautics and Space Act of 1958, Pub. L. No. 85-568, § 203(b)(5), 72 Stat. 430 (1958).

A.     DOD's Limited Other Transaction Authority Between 1989 and 2015

In 1989, recognizing many successful research and development efforts by the Defense Advanced Research Projects Agency (DARPA), Congress conferred upon DARPA new authority to enter into cooperative agreements and OTs, in addition to its preexisting authority to use grants and procurement contracts.  10 U.S.C. § 2371 (Supp. I 1989); National Defense Authorization Act (NDAA) for Fiscal Years 1990 and 1991, Pub. L. No. 101-189, § 251(a)(1), 103 Stat. 1352, 1403-04 (1989) (1990-1991 NDAA); S. Rep. No. 101-81, at 126-27 (1989).  Nonetheless, Congress' initial grant of authority was limited, specifying that OTs and cooperative agreements could be used "only when the use of standard contracts or grants is not feasible or appropriate."  10 U.S.C. § 2371(d)(3) (Supp. I 1989); *accord* S. Rep. No. 101-81, at

---

[1] In furtherance of this statutory authority, President Eisenhower transferred to NASA certain DOD functions related to research and development for satellite and space projects. *Transferring certain functions from the Department of Defense to the National Aeronautics and Space Administration*, Exec. Order No. 10783 of Oct. 1, 1958, 23 Fed. Reg. 7,643 (Oct. 3, 1958).

127 ("In granting the authority to enter into 'other transactions', the [Senate Committee on Armed Forces] enjoins the Department to utilize this unique authority only in those instances in which traditional authorities are clearly not appropriate."). Congress included a sunset provision and reporting requirements that would allow Congress to further assess whether OT authority should be retained, amended, or expanded to other parts of DOD. 10 U.S.C. § 2371(f), (g) (Supp. I 1989); H.R. Rep. No. 101-331, at 531-32 (1989) (Conf. Rep.).

After an initial two-year review period, Congress extended OT authority to all of DOD, not only DARPA, and made the authority permanent. NDAA for Fiscal Years 1992 and 1993, Pub. L. No. 102-190, § 826, 105 Stat. 1290, 1442 (1991) (1992-1993 NDAA). The Senate Armed Services Committee explained that "all Department of Defense activities engaged in research and technology development can benefit from the flexibility provided by this provision in appropriate circumstances. This is particularly true in those instances in which the activity plans to engage in cooperative ventures with the private sector at the pre-competitive development stage." S. Rep. No. 102-113, at 242-43 (1991).

Then, in 1993, Congress granted DARPA authority to use its OT authority to "carry out prototype projects that are directly relevant to weapons or weapon systems proposed to be acquired or developed by the Department of Defense." NDAA for Fiscal Year 1994, Pub. L. No. 103-160, § 845, 107 Stat. 1547, 1721-22 (1993) (1994 NDAA). Congress later extended this prototyping OT authority for weapons systems to all of DOD. NDAA for Fiscal Year 1997, Pub. L. No. 104-201, § 804, 110 Stat. 2422, 2605 (1996) (1997 NDAA). In 2001, Congress further expanded DOD's OT authority for weapons systems by allowing for follow-on productions without further competitive procedures under certain circumstances. NDAA for Fiscal Year 2002, Pub. L. No. 107-107, § 822, 115 Stat. 1012, 1182 (2001) (2002 NDAA).

B.    DOD's Expanded Other Transaction Authority Since 2015

Through the early 2000s, Congress continued to maintain its view, first expressed in the original 1989 OT authority granted to DARPA, that OTs should be used only when traditional contracts or grants would be inadequate.  S. Rep. No. 109-69, at 360 (2005).  By 2015, however, Congress changed course, made permanent DOD's prototyping OT authority, and expanded it. 10 U.S.C. § 2371b (Supp. III 2015) (now codified at 10 U.S.C. § 4022); NDAA for Fiscal Year 2016, Pub. L. No. 114-92, § 815, 129 Stat. 726, 893 (2015) (2016 NDAA).  Notably, Congress removed the limitation that DOD's OT authority must be used for prototype projects related to weapons systems; instead, Congress authorized DOD to use its OT authority more generally for projects "directly relevant to enhancing the mission effectiveness of [military] personnel … [and the supporting] platforms, systems, components, or materials proposed to be acquired or developed by the Department of Defense, or to improvement of platforms, systems, components, or materials in use by the armed forces."  10 U.S.C. § 2371b(a)(1) (Supp. III 2015).  As relevant to this case, this enhanced prototype OT authority also omitted the equivalent language from section 2371 that OTs should only be used for non-prototype research and development activities if "use of a standard contract, grant, or cooperative agreement for such project is not feasible." 10 U.S.C. § 2371(e)(2) (2018).  That is, as of 2015, Congress no longer limited DOD's use of prototype OT authority to situations where a traditional procurement contract or grant was infeasible.

The legislative history and subsequent legislation confirmed Congress's intent to liberalize DOD's use of OTs for prototyping efforts through the statutory changes in the newly codified section 2371b.  The Senate Armed Services Committee viewed DOD's expanded OT authority as part of "a multi-year effort to improve the underlying structure and process that

delivers warfighting capability to the nation." S. Rep. No. 114-49, at 163 (2015). The Committee's DOD acquisition policy reforms were focused on increasing economic efficiency and access to innovation. *Id.* at 163-64. To achieve these results, the Committee emphasized the need for DOD to "increase access to commercial innovation and competition," in part by ensuring that innovative private-sector companies are willing to contract with DOD. *Id.* at 165. The Committee observed that procurement barriers intended to be removed through reforms enacted in the 1990s, including the Federal Acquisition Streamlining Act of 1994, had "returned in law, regulation, and practice." *Id.* In particular, the Committee remarked that "[OT] authority was another method to entice non-traditional firms into the defense market, but use of this authority ha[d] atrophied over the years to an exception basis." *Id.*

The Senate Armed Services Committee confirmed that the statutory liberalization of DOD's newly codified OT authority was intended to "incentivize commercial innovation by removing barriers to new entrants into the defense market[.]" S. Rep. No. 114-49, at 165. The Committee added that the expanded language in section 2371b for prototype OTs "should lead to more effective and broader usage of this authority." *Id.* at 168. Aware that "many interpretive and cultural barriers that have been put in place to impede the use of [OTs]," the Committee directed that DOD's newly codified OT authority in section 2371b (now section 4022) "should be used to their maximum extent by the Department of Defense … in order to streamline acquisition of innovative research and technology from the private sector." *Id.*

The House Armed Services Committee shared the Senate Committee's perspective, stating that permanently codifying DOD's prototype OT authority would provide DOD "additional confidence in the type of experimentation and organizational learning that is necessary if the Department is to remain competitive in the commercial marketplace." H.R. Rep.

No. 114-102, at 202-03 (2015).  And this shared view was reiterated in the Conference Report

accompanying the final version of the 2016 NDAA:

> The conferees believe that the flexibility of the OTA authorities of
> section 2371 of title 10, United States Code, and the related and
> dependent authorities of section 845 of the National Defense
> Authorization Act for Fiscal Year 1994 (Public Law 103-160) as
> modified and codified in this provision, can make them attractive
> to firms and organizations that do not usually participate in
> government contracting due to the typical overhead burden and
> ''one size fits all'' rules.  The conferees believe that expanded use
> of OTAs will support Department of Defense efforts to access new
> source[s] of technical innovation, such as Silicon Valley startup
> companies and small commercial firms.

H.R. Rep. No. 114-270, at 703 (2015) (Conf. Rep.).

The following year, in debating the 2017 NDAA, the Senate Armed Services Committee

commented on the implementation of DOD's broader OT authority from the prior year.  The

Committee was "pleased to see new and longstanding users of [OTs] make additional use of this

important and flexible contracting method."  S. Rep. No. 115-125, at 189 (2017).  But the

Committee expressed "frustrat[ion] by an ongoing lack of awareness and education regarding

[OTs], particularly among senior leaders, contracting professionals, and lawyers," explaining:

> This lack of knowledge leads to an overly narrow interpretation of
> when OTAs may be used, narrow delegations of authority to make
> use of OTAs, a belief that OTAs are options of last resort for when
> Federal Acquisition Regulation (FAR) based alternatives have
> been exhausted, and restrictive, risk averse interpretations of how
> OTAs may be used.

*Id.*  Addressing these views, the Committee reaffirmed:

> The statutory authority for other transactions as delineated in
> section 2371 and 2371b of title 10, United States Code, is written
> in an intentionally broad manner.  The Department of Defense
> (DOD) should interpret these authorities accordingly, recognizing
> that it has authority to use OTAs with the most flexible possible
> interpretation unless otherwise specified in those particular
> sections.

*Id.* at 190.  The Committee preferred not to amend section 2371b to "add further explicit authorities for specific functions" because "doing so may lead to the incorrect impression that all potential functions that may be executed under OTs must be stated in statute."  *Id.*

The next year, 2017, Congress acted again to communicate its preference that DOD expand its use of OTs.  Previously, in 2015, Congress had removed the limitation that DOD could only use OTs for prototype projects if it were infeasible to use a procurement contract, grant, or cooperative agreement.  Now, in 2017, Congress went further and enacted a statutory *preference* to use OTs for prototype projects:

> In the execution of science and technology and prototyping programs, the Secretary of Defense shall establish a preference, to be applied in circumstances determined appropriate by the Secretary, for using transactions other than contracts, cooperative agreements, and grants entered into pursuant to sections 2371 and 2371b of title 10, United States Code, and authority for procurement for experimental purposes pursuant to section 2373 of title 10, United States Code.

NDAA for Fiscal Year 2018, Pub. L. No. 115-91, § 867, 131 Stat. 1283, 1495 (2017) (2018 NDAA).  This statutory preference remains in force today.  10 U.S.C. § 4021 note.

Since the beginning of this OT liberalization effort in 2015, Congress has continued to endorse the use of OTs in a wide range of circumstances.  Congress added the present definitions of prototype projects in 2022.  10 U.S.C. § 4022(e)(5); NDAA for Fiscal Year 2023, Pub. L. No. 117-263, § 843, 136 Stat. 2395, 2718 (2022) (2023 NDAA).  That same year, Congress specifically authorized DOD to carry out additional studies and demonstration projects for delivery of health care services to servicemembers through OTs.  10 U.S.C. § 1092; 2023 NDAA § 717, 136 Stat. at 2662; S. Rep. No. 117-130, at 176 (2022).  During subsequent debate on the 2025 NDAA, the Senate Armed Services Committee again reaffirmed its present view of OTs: "The committee believes OTAs provide the Department of Defense additional flexibility over

- 8 -

Federal Acquisition Regulation-based contracting for certain types of research, prototyping, and

production efforts." S. Rep. No. 118-188, at 181 (2024).

      C.       DOD's Current OT Authority

      As discussed in sections A and B above, earlier statutes and the legislative history

reflected a distinction between OTs and contracts, grants, and cooperative agreements. The

current version of the OT statute continues to define OTs as a transacting method *other than* a

contract, grant, or cooperative agreement:

> The Secretary of Defense or the Secretary of a military department may perform research and development projects--
>     (1) by *contract, cooperative agreement, or grant, in accordance with chapter 63 of title 31* [the Federal Grant and Cooperative Agreement Act (FGCAA)];
>     (2) through one or more military departments;
>     (3) by using employees and consultants of the Department of Defense;
>     (4) by mutual agreement with the head of any other department or agency of the Federal Government;
>     (5) *by transactions (other than contracts, cooperative agreements, and grants) entered into pursuant to section 4021 or 4022 of this title*; or
>     (6) by purchases through procurement for experimental purposes pursuant to section 4023 of this title.

10 U.S.C. § 4001(b) (emphasis added). In turn, section 4021 authorizes DOD and each military

department to "enter into transactions (other than contracts, cooperative agreements, and grants)

under the authority of this subsection in carrying out basic, applied, and advanced research

projects." *Id.* § 4021(a). Of relevance here, section 4022 further authorizes DOD and each

military department to exercise "the authority in section 4021" to "carry out prototype projects

that are directly relevant to" (i) "enhancing the mission effectiveness of personnel of the

Department of Defense," (ii) "improving platforms, systems, components, or materials proposed

to be acquired or developed by the Department of Defense," or (iii) "to improvement of

- 9 -

platforms, systems, components, or materials in use by the armed forces." *Id.* § 4022(a)(1).  Any

follow-on production contracts or transactions authorized under DOD's OT authority can be

awarded using an additional OT *or* by using a standard procurement contract.  *Id.* § 4022(f)(5).

As noted above, this case involves OTs for testing MUSV prototypes, AR 251-52, not for

acquiring them, and not for producing them.  *See id.*

ARGUMENT

I.      The Protest Should Be Dismissed For Lack Of Jurisdiction

A.      Standard Of Review

Rule 12(b)(1) provides that "a party may assert … by motion" the defense of "lack of

subject-matter jurisdiction."  RCFC 12(b)(1).  "If the court determines at any time that it lacks

subject-matter jurisdiction, the court must dismiss the action."  RCFC 12(h)(3).  Indeed, the

Court must "satisfy itself of its jurisdiction over the subject matter before it considers the merits

of a case."  *Hymas v. United States*, 810 F.3d 1312, 1316-17 (Fed. Cir. 2016) (citation omitted).

"Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining

to the court is that of announcing the fact and dismissing the cause."  *Ex Parte McCardle*, 74

U.S. (7 Wall.) 506, 514 (1869).

"The party seeking to invoke the … Court's jurisdiction must establish that jurisdiction

exists by a preponderance of the evidence."  *Hymas*, 810 F.3d at 1317 (citing *Taylor v. United

States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)).  "Although, for purposes of jurisdiction," the

Court "typically assume[s] as true all facts alleged in a complaint, where 'the factual basis for the

court's subject matter jurisdiction' is challenged, 'only uncontroverted factual allegations are

accepted as true.'"  *Hymas*, 810 F.3d at 1317 (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11

F.3d 1573, 1583-84 (Fed. Cir. 1993)).  In this case, the Court does not possess jurisdiction to

- 10 -

entertain this bid protest regarding prototype OTs, which lie beyond the limited bounds of bid protest jurisdiction under the Tucker Act.

B.    The Court's Jurisdiction Is Limited

"[T]he United States, as sovereign, 'is immune from suit save as it consents to be sued … and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *accord Hymas*, 810 F.3d at 1317. "Consistent with this principle, the Tucker Act confers limited jurisdiction on the … Court to adjudicate claims against the United States." *Hymas*, 810 F.3d at 1317. With respect to bid protests, the Tucker Act states:

> [T]he United States Court of Federal Claims … shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed award or the award of a contract or any alleged violation of statute or regulation *in connection with a procurement or a proposed procurement*.

28 U.S.C. § 1491(b)(1) (cleaned up, emphasis supplied).

"The Tucker Act operates as a waiver of sovereignty by the United States and" the Court is "obliged to construe such waivers strictly." *Smith v. Orr*, 855 F.2d 1544, 1552-53 (Fed. Cir. 1988) (discussing Little Tucker Act, 28 U.S.C. § 1346); *accord MacLean v. United States*, 454 F.3d 1334, 1336 (Fed. Cir. 2006) ("a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity … must be strictly construed") (quoting *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988)). Thus, "notions of fairness and equity do not operate to enlarge" the "rigid jurisdictional limitations … in the Tucker Act." *Murphy v. United States*, 222 Ct. Cl. 685, 686 (1980); *accord Hercules Inc. v. United States*, 516 U.S. 417, 430 (1996) (similar).

C.     The Court Does Not Possess Bid Protest Jurisdiction To Entertain Challenges To Non-Procurement Actions

Plaintiffs allege that the Court possesses jurisdiction under 28 U.S.C. § 1491(b)(1).  Blue Water Am. Compl. ¶ 14, ECF No. 74; Saildrone Am. Compl. ¶ 20, ECF No. 73.  However, bid protest jurisdiction under section 1491(b)(1) "in its entirety is exclusively concerned with *procurement* solicitations and contracts,"[2] *Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1245 (Fed. Cir. 2010) (emphasis supplied), and *procurement* contracts do not "encompass the entire universe of instruments at executive agencies' disposal." *Hymas*, 810 F.3d at 1325.  Grants, cooperative agreements, and prize competitions are several examples of *non-procurements* that lie beyond the scope of this Court's jurisdiction under section 1491(b)(1). *Id.* at 1329-30; *Frankel v. United States*, 842 F.3d 1246, 1250-51 (Fed. Cir. 2016).  The OTs at issue in this case are another example of *non-procurements* over which the Court similarly does not possess jurisdiction under section 1491(b)(1). *See* AR 2090, AR 2128, AR 2163, AR 2200, AR 2241, AR 2277, AR 2312 (each OT providing:  "The statutory authority for this agreement is 10 U.S.C § 4022(a)(1).  This agreement is *not a Federal procurement contract*, grant or cooperative agreement.") (emphasis supplied).

As discussed, since 1989, Congress has authorized (and increasingly has encouraged) DOD and the military branches to use non-procurement OTs.  10 U.S.C. §§ 4001, 4022.  Section 4022 authorizes OTs for prototype agreements, which may be followed by production contracts in the form of OTs or procurement contracts. *Id.* § 4022.  There is no dispute that the Navy

---

[2] In *Resource Conservation*, the Federal Circuit *rejected* an argument that the "in connection with a procurement or a proposed procurement" language in 28 U.S.C. § 1491(b)(1) applied *only* to "alleged violation of statute or regulation," and *not* to objections "to a solicitation … for a proposed contract," "to a proposed award," or to "the award of a contract." *Res. Conservation*, 597 F.3d at 1243-45.  The Federal Circuit held that section "1491(b)(1) in its entirety is exclusively concerned with *procurement* solicitations and contracts," and that "relief under 1491(b) is unavailable outside the *procurement* context." *Id*. at 1245 (emphasis supplied).

possessed and properly invoked its OT authority under section 4022. Plaintiffs' sole contention

is that the Navy should have awarded *additional* prototype OTs *to them* under this authority.

> 1.  *Hymas* Requires This Court To Harmoniously Construe The Scope Of Its Bid Protest Jurisdiction Over Procurements And Statutes Authorizing Non-Procurements

*Hymas* controls the jurisdictional inquiry in this case. As explained in *Hymas*, for

purposes of the Tucker Act, the Federal Circuit at times has "relied upon the definition of

'procurement' in 41 U.S.C. § 111" (previously codified at 41 U.S.C. § 403(2)). *Hymas*, 810 F.3d

at 1324-25; *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340, 1345-46 (Fed. Cir.

2008); *see also* 41 U.S.C. § 111 ("procurement" may include "all stages of the process of

acquiring property or services, beginning with the process for determining a need for property or

services and ending with contract completion and closeout.").[3] However, *Hymas* clarified that

the term "procurement" must be construed *harmoniously* for purposes of the Tucker Act, the

FGCAA, and the Competition in Contracting Act (CICA). *Hymas*, 810 F.3d at 1327 (courts

"*must respect the concinnity* between the separate yet interrelated statutes that Congress has

enacted" and should not "rely solely upon 41 U.S.C. § 111") (emphasis supplied). The Federal

Circuit held that, when an agency exercises its statutory authority to use a non-procurement

---

[3] In *Distributed Solutions*, there was no dispute that the agency was contemplating the use of procurement contracting authority, unlike *Hymas*, which addressed this Court's jurisdiction when an agency decides to use non-procurement authority instead of procurement authority. *Distributed Solutions* and its progeny also have recognized there are situations that literally may constitute stages in the acquisition of property or services, but do not trigger a new competitive acquisition process, and thus are not subject to bid protest jurisdiction under the Tucker Act. *See, e.g.*, *Distributed Solutions*, 539 F.3d at 1346 ("adding work to an existing contract that is clearly within the scope of the contract does not raise a viable protest under §1491(b)(1)"); *VFA, Inc. v. United States*, 118 Fed. Cl. 735, 743 (2014) (12(b)(1) dismissal of protest challenging agency decision not to procure property or service from private contractor); *Kellogg Brown & Root Servs. v. United States*, 117 Fed. Cl. 764, 768-70 (2014) (12(b)(1) dismissal of protest filed by contract awardee challenging agency contract administration decision). This qualification from *Distributed Solutions* and its progeny is not at issue here.

instrument, and the law does not require the use of a procurement contract, the agency is not required to comply with CICA, *and* the Court does not possess bid protest jurisdiction to review the non-procurement action. *Id.* at 1324-30; *see also CMS Contract Mgmt. Servs. v. United States*, 745 F.3d 1379, 1381 (Fed. Cir. 2014) ("agencies escape the requirements of federal procurement law" when using a non-procurement contract).

*Hymas* involved cooperative agreements. *Hymas*, 810 F.3d at 1314. The Federal Circuit reasoned that, because cooperative agreements authorized by Congress were *not procurements*, and because Section 1491(b)(1) is exclusively concerned with *procurement* solicitations and *procurement* contracts, this Court did not possess bid protest jurisdiction over cooperative agreements. *Id.* at 1329-30 (citing *Res. Conservation*, 597 F.3d at 1245). Likewise, here, OTs authorized by Congress are *not* procurements, section 1491(b)(1) is exclusively concerned with *procurement* solicitations and *procurement* contracts, and this Court does not possess bid protest jurisdiction over OTs. A straightforward reading of *Hymas* compels this conclusion.

In *Hymas*, the plaintiff filed a bid protest in this Court challenging the U.S. Fish and Wildlife Service's award of cooperative farming agreements for cropland management near wildlife refuges. 810 F.3d at 1315-16. As in this case, the Government moved this Court to dismiss for lack of subject matter jurisdiction, arguing that cooperative farming agreements are not procurement contracts necessary to confer bid protest jurisdiction under 28 U.S.C. § 1491(b). *Id.* at 1316. This Court denied the Government's motion, holding that CICA "contains the operative definition of 'procurement' for purposes of determining jurisdiction under the Tucker Act." *Id.* CICA defines a procurement as "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." 41 U.S.C. § 111. Given CICA's expansive definition,

this Court went on to find that the cooperative farming agreements "amounted to 'a procurement,' such that [the Court] had Tucker Act jurisdiction" over the bid protest. *Hymas*, 810 F.3d at 1316.  On appeal, the Federal Circuit flatly rejected this reasoning.

In overturning this Court's jurisdictional ruling, the Federal Circuit held that CICA and its procurement definition do not "override" other statutorily authorized transacting authorities just because an agreement or transaction can technically fit within CICA's definition of a procurement. *Hymas*, 810 F.3d at 1326-27.  Instead, the Federal Circuit explained that Congress does not legislate in a vacuum, and that each new law passed by Congress is presumed to be *in harmony* with existing law unless otherwise stated. *Id.* (citing *Aectra Refining & Mktg., Inc. v. United States*, 565 F.3d 1364, 1370 (Fed. Cir. 2009)).  For the *Hymas* case, this meant that the cooperative agreements authorized by Congress in the Fish and Wildlife Coordination Act of 1958 stood on their own for purposes of determining the agency's non-procurement authority *and* informed the proper scope of this Court's bid protest jurisdiction. *Id.* at 1326-28.  Consistent with precedent, the Federal Circuit held that, where authorized by statute, the use of a cooperative agreement versus a procurement contract is a policy choice that the agency has authority to make, and this Court's concerns about "meaningful limitations" to the agency's choice from among multiple transacting authorities was a question "best left to" the agency. *Id.* at 1324 (citing *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 966 F.2d 660, 665 (Fed. Cir. 1992) ("[o]ur duty is not to weigh the wisdom of, or to resolve any struggle between, competing views of the public interest, but rather to respect legitimate policy choices made by the agency in interpreting and applying the statute")).

Ultimately, because the agency in *Hymas* was authorized by Congress to enter into *non-procurements* – cooperative agreements – and the agency properly had invoked that authority

- 15 -

when using cooperative farming agreements, the Federal Circuit found that this Court *did not possess Tucker Act jurisdiction* to hear the case, because that bid protest was not in connection with a procurement solicitation or procurement contract.  *Id.* at 1329-30.  As in *Hymas*, the bid protests before the Court here do not involve a procurement contract, but rather another type of transacting authority:  an OT.  And like cooperative agreements and grants, OTs have been statutorily set apart from procurements by Congress, as the Federal Circuit recently recognized, albeit in a case that was not a bid protest.  *See Bader v. United States*, 97 F.4th 904, 915 (Fed. Cir. 2024) (recognizing that DOD's "[OT] [a]uthority provides a more diverse set of contractors the opportunity to partner with the [F]ederal government in research and development initiatives without needing to adhere to traditional government contracting requirements," and that "the FAR does not apply to the [OT] Authority") (citing John Cibinic, Jr. *et al.*, *Formation of Government Contracts* § 1.02(d) (5th ed. 2023) ("When an agency uses its [OT] authority, it generally need not comply with the procurement statutes [or] the FAR," but it still "will be required to comply with any other statute of general applicability.")).

In sum, *Hymas* instructs that it "is occasionally necessary in deciding the parameters of bid protest jurisdiction" to "answer certain foundational questions that necessarily will impart whether the court has jurisdiction over the issues raised."  *Hymas*, 810 F.3d at 1317.  Specifically, the Court "must first decide whether the [agency] has statutory authority to enter into [non-procurement] agreements."  *See id.*  The Court "must next decide whether the [agency] properly construed the [contracting instruments] as [non-procurement] agreements, rather than procurement contracts."  *See id.*  The ultimate question of "[w]hether a contract is a procurement contract or a [non-procurement] agreement is a question of law."  *See id.*  These are the two prongs of the jurisdictional inquiry.  However, "Congress did not require the use of particular

instruments in particular situations, it left a gap for agencies to fill, and … filling such gaps involves difficult policy choices that agencies are better equipped to make than courts." *Id.* at 1329 (citation and internal quotation marks omitted).

2.    Congress Granted The Navy OT Authority For Non-Procurement Actions

As discussed above, when Congress first granted statutory OT authority to DOD in 1989, with the passage of the 1990-1991 NDAA, Congress added section 2371 to title 10, which gave DARPA the ability to "enter into cooperative agreements and other transactions with any person, any agency or instrumentality of the United States, any unit of State or local government, any educational institution, and any other entity" in order to carry out advanced research projects. Congress subsequently expanded this authority to the rest of DOD, including the Navy. *See* 10 U.S.C. §§ 4021(a), 4022(a).

Critically, in the 1990-1991 NDAA, Congress made clear that cooperative agreements and OTs were separate from procurement contracts. For example, the then-newly created OT authority distinguished between OTs and standard contracts and grants when it provided that "the authority under this section is used only when the use of standard contracts or grants is not feasible or appropriate." 1990-1991 NDAA § 251(a) (citing 10 U.S.C. § 2371(d)(3)). This distinction is evident in that Congress imposed a reporting requirement for other transactions and cooperative agreements apart from contracts and grants: "[n]ot later than 60 days after the end of each fiscal year, [DOD] shall submit … a report on all cooperative agreements and other transactions (other than contracts and grants) entered into under this section during such fiscal year." *Id.* (citing 10 U.S.C. § 2371(f)). The report to Congress was even required to state "[t]he reasons for not using a contract or grant to provide support for such advanced research." *Id.* (citing 10 U.S.C. § 2371(f)(3)). Given that Congress differentiated OTs and cooperative

- 17 -

agreements from "standard contracts and grants" from the outset, it is clear that Congress always has considered them to be *different* transacting instruments.  Any argument by plaintiffs that Congress anomalously intended OTs to be considered procurement contracts for purposes of Tucker Act jurisdiction even though they are non-procurements for purposes of the OT statute cannot be squared with the central teaching of *Hymas* that the scope of Tucker Act jurisdiction over procurements contracts must be read *harmoniously* with other statutes that authorize agencies to use non-procurements.  *See Hymas* 810 F.3d at 1327.

The 1990-1991 NDAA, and the NDAAs since that have reinforced or expanded DOD's OT authority, were all passed by Congress well after the FCGAA and CICA.  All along, Congress has been aware of the various transacting methods agencies could use, and the legislature specifically carved out OTs and cooperative agreements.  The OT carve out should be treated as both deliberate and harmonious with the FGCAA and CICA,[4] otherwise the Court would deprive the military of a legitimate policy choice that Congress has authorized and render the grant of OT authority superfluous.  *See Hymas*, 810 F.3d at 1326-27 (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991)).

The distinction between procurement and non-procurement authorities has been further reinforced by NDAAs that reauthorized and expanded DOD's OT authority.  *See* 2016 NDAA § 815(a)(1), 129 Stat. 726 (adding DOD's prototype production authority that is now codified at

---

[4] In 1984, Congress passed CICA, which establishes a general requirement that executive agencies "obtain full and open competition through the use of competitive procedures" when "conducting a *procurement* for property or services."  Pub. L. No. 98-369, § 2711, 98 Stat. 1175 (1984), *codified at* 41 U.S.C. § 3301(a)(1) (emphasis supplied).  There are numerous exceptions to CICA's "full and open competition" requirement, including an "except[ion] in the case of procurement procedures otherwise expressly authorized by statute."  41 U.S.C. § 3301(a)(1). CICA does not apply to contracting actions that are not procurements under the FGCAA. *Hymas*, 810 F.3d at 1320, 1324, 1329-30.

10 U.S.C. § 4022(f)).  The current version of DOD's OT statute continues to define OTs as a transacting method *other than* a contract, grant, or cooperative agreement:

> The Secretary of Defense or the Secretary of a military department may perform research and development projects--
>
> > (1) by *contract, cooperative agreement, or grant, in accordance with chapter 63 of title 31* [the FGCAA]; … [or]
> >
> > (5) *by transactions (other than contracts, cooperative agreements, and grants) entered into pursuant to section 4021 or 4022 of this title*; …

10 U.S.C. § 4001(b)(1), (b)(5) (emphasis added).  Echoing this distinction, section 4021 authorizes DOD and each military department to "enter into transactions (*other than contracts, cooperative agreements, and grants*) under the authority of this subsection in carrying out basic, applied, and advanced research projects."  *Id.* § 4021(a) (emphasis supplied); *see also id.* § 4022(a)(1) (authorizing DOD and each military department to exercise "the authority in section 4021" for a wide variety of prototype projects).  Reinforcing the same distinction, any follow-on production authorized under DOD's OT authority may be awarded using an additional OT *or* a standard procurement contract.  *Id.* § 4022(f)(5).  Congress has delineated a clear difference between non-procurement OTs, and procurement contracts under the FGCAA, to promote "flexibility" and "innovation."  S. Rep. No. 118-188, at 181; S. Rep. No. 115-125, at 189-90; S. Rep. No. 114-49, at 163-65; H.R. Rep. No. 114-270, at 703; S. Rep. No. 102-113, at 242-43.

Indeed, when the OT statute, 10 U.S.C. § 4001(b)(1), refers to a "contract, cooperative agreement, or grant in accordance with chapter 63 of title 31" – that is an explicit cross-reference to the FGCAA, which, in turn, governs *procurement* contracts, cooperative agreements, and

grants. [5] 31 U.S.C. §§ 6303 (procurement contracts), 6304 (grants), 6305 (cooperative

agreements). Subsequent references to OTs as "transactions (other than contracts, cooperative

agreements, or grants," 10 U.S.C. §§ 4001(b)(5), 4021(a), use the similar language to define OTs

as something else. *See Independent Rough Terrain Center v. United States*, 172 Fed. Cl. 250,

258 (2024) (recognizing that "the statutory OT provisions describe OT agreements as something

other than a procurement contract (or cooperative agreement or grant)"); *Space Exploration

Techs. Corp. v. United States*, 144 Fed. Cl. 433, 435, 442 (2019) (holding that "OTs are not

procurement contracts, cooperative agreements, or grants" and "are not procurement contracts

that fall within the purview of this Court's bid protest jurisdiction"); *see also Nat'l Credit Union

Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 501 (1998) (reiterating the "established

---

[5] In 1978, Congress passed the FGCAA to "promote increased discipline in selecting and using procurement contracts, grant, and cooperative agreements." Pub. L. No. 95-224, § 2(b)(3), 92 Stat. 3 (1978), *codified at* 31 U.S.C. § 6301(3). The FGCAA "prescribe[s] criteria for executive agencies in selecting appropriate legal instruments to achieve (A) uniformity in their use by executive agencies; (B) a clear definition of the relationships they reflect; and (C) a better understanding of the responsibilities of the parties to them." 31 U.S.C. § 6301(2). The FGCAA "eliminate[s] unnecessary administrative requirements on recipients of Government awards by characterizing the relationship between executive agencies and contractors, States, local governments, and other recipients in acquiring property and services and in providing United States Government assistance." 31 U.S.C. § 6301(1). To promote these goals, Congress made a clear distinction in the FGCAA between "procurement contracts," "grants," and "cooperative agreements." 31 U.S.C. §§ 6303, 6304, 6305. Under the FGCAA, Congress intended that agencies "have the flexibility of determining whether a given transaction … is procurement or assistance and, if assistance, whether the transaction or class of transactions is to be associated with a type of grant or cooperative agreement relationship." S. Rep. No. 95-449, at 10 (1977) (Report of Senate Committee on Governmental Affairs to accompany FGCAA). Congress also intended to provide agencies with "ample flexibility to decide what is most appropriate in light of their purposes." *Id.* at 29. Congress understood and intended that, when properly using a cooperative agreement or grant under the FGCAA, executive agencies are not subject to the statutes and regulations that govern procurement contracts. *Id.* at 11 ("[W]hen an agency change[s] the award mechanism from a type of procurement contract to a type of grant, the regulations and statutes applying to procurement contracts would no longer apply" and, instead, "[t]he regulations and statutes applying to transactions of Federal assistance would apply.").

- 20 -

canon of construction that similar language contained within the same section of a statute must be accorded a consistent meaning.").

### 3. Congress Legislated Against The Backdrop Of Existing Statutes That Authorized Non-Procurements When Creating Bid Protest Jurisdiction

Congress enshrined this Court's bid protest jurisdiction in the Tucker Act *after* the 1990-1991 NDAA. Specifically, in 1996, Congress amended the Tucker Act to provide for bid protest jurisdiction in section 1491(b)(1). Admin. Dispute Resolution Act, Pub. L. No. 104-320, § 12, 110 Stat. 3874-76 (1996). At that time, the use of OTs had been well-established for decades. *See*, *e.g.*, National Aeronautics and Space Act of 1958, Pub. L. 85-568, § 203(b)(5), 72 Stat. 430 (1958) (authorizing NASA to use OTs), *codified at* 51 U.S.C. 20113(e); Court Interpreters Act of 1978, Pub. L. No. 95-539, § 3(a), 92 Stat. 4043 (1978) (authorizing Executive Office of United States Courts to use OTs), *codified at* 28 U.S.C. § 604(a)(10)(C). "Congress is presumed to enact legislation with knowledge of the law and a newly-enacted statute is presumed to be harmonious with existing law and judicial concepts." *Hymas*, 810 F.3d at 1327 (quoting *Aectra*, 565 F.3d at 1370). Congress presumably would not have used the term "procurement" in the Tucker Act – in 1996 – if it had intended to authorize bid protests challenging non-procurement OTs that separately were permitted under the 1990-1991 NDAA and other Federal statutes. *See id.*

Likewise, in 1989, when Congress passed the 1990-1991 NDAA and authorized DOD to use OTs, and again in 2015, when Congress passed the 2016 NDAA and authorized the Navy to exercise the same OT authority, Congress legislated against the backdrop of existing law, such as the FGCAA (passed in 1977) and CICA (passed in 1984). Congress presumably would not have used the terms "other transactions" and "cooperative agreements" in the NDAAs if it had meant

"procurements" within the meaning of the FGCAA and CICA.  *See Hymas*, 810 F.3d at 1327;

*Aectra*, 565 F.3d at 1370.

4.    The Court Should Follow *Hymas* And Dismiss This Protest

*Hymas* is clear:  Courts "*must respect the concinnity* between the separate yet interrelated

statutes that Congress has enacted" and when construing the proper scope of bid protest

jurisdiction under 28 U.S.C. § 1491(b)(1).[6]  *Hymas*, 810 F.3d at 1327 (emphasis supplied).  In

other words, a procurement is a procurement – for purposes of the Tucker Act, CICA, and

DOD's OT statute – three separate yet interrelated statutes that must be construed harmoniously.

*See id.*  As noted above, under *Hymas*, the jurisdictional questions for this Court to answer are

twofold:  (1) whether the Navy possesses statutory authority to use a non-procurement OT for

the prototype project at issue; and (2) whether the Navy properly invoked its non-procurement

authority for the prototype OTs in this case.  *See id.* at 1317-18.  If the answers to these two

questions are yes, then the case does not involve a procurement contract or solicitation, the Court

does not possess jurisdiction under section 1491(b)(1), and that ends the jurisdictional inquiry.

In this case, the answers to these two questions *are* yes, so the only conclusion supported

by the statutory text and controlling Federal Circuit precedent is that the Court lacks jurisdiction

here.  The Navy possesses clear statutory authority to use OTs – non-procurements – for

prototype projects.  *See* 10 U.S.C. §§ 4001(b), 4021, 4022; *see also* Blue Water Am. Compl. ¶ 28

("The Navy has authority under 10 U.S.C. § 4022 to enter into OTAs for prototype projects for

the purpose of improving platforms, systems, components, or materials used or developed by the

Department of Defense or armed forces.").  Indeed, from its inception, DOD's OT statute plainly

---

[6] The word "concinnity" means "harmony or elegance of design" especially "in adaption of parts to a whole or to each other." *Concinnity*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2005).

has delineated an OT agreement from a "standard" procurement contract.  1990-1991 NDAA § 251(a).  Congress has reinforced this in every iteration of DOD's governing OT statute since it was first enacted.  An OT, according to Congress, is something else – it is something *other than* a procurement contract, cooperative agreement, or grant.  10 U.S.C. § 4021(a); *see also id.* §§ 4001(b)(1), 4001(b)(5).  Notably, there is no allegation in this case that the Navy exceeded the lawful bounds of its OT authority.  Plaintiffs merely complain that the Navy did not *further exercise* that authority to *award them* prototype OTs.

As the Federal Circuit found in *Hymas*, once those two threshold questions are answered, the jurisdictional conclusion is straightforward.  *Hymas*, 810 F.3d at 1329-30.  The Court is charged by statute with hearing bid protests that are "exclusively" concerned with procurement solicitations and contracts, not cooperative agreements, not grants, and not OTs.  *See id.* (quoting *Res. Conservation*, 597 F.3d at 1245; and 28 U.S.C. § 1491(b)(1)).  Because the Navy exercised its non-procurement authority to award prototype OTs for this project, the Court does not possess jurisdiction to entertain these bid protests regarding that non-procurement action.  *See id.* Indeed, there is no solicitation for a procurement contract, there is no award of a procurement contract, and there is no alleged violation of a statute or regulation in connection with a procurement or proposed procurement.  *See* 28 U.S.C. § 1491(b)(1).  Accordingly, jurisdiction does not exist under section 1491(b)(1).

Nevertheless, plaintiffs allege that the Navy violated title 10 U.S.C. § 4022(b)(2), when evaluating proposals under the RPP.  Blue Water Am. Compl. ¶¶ 122-26, 158-61; Saildrone Am. Compl. ¶¶ 144-46.  Section 4022(b)(2) states: "To the maximum extent practicable, competitive procedures shall be used *when entering into agreements to carry out the prototype projects under subsection (a).*"  10 U.S.C. § 4022(b)(2) (emphasis supplied).  Blue Water also cites section

4022(e)(5), which broadly defines the term "*prototype project*" as "(A) a proof of concept, model, or process, including a business process; (B) reverse engineering to address obsolescence; (C) a pilot or novel application of commercial technologies for defense purposes; (D) agile development activity; (E) the creation, design, development, or demonstration of operational utility; or (F) any combination of subparagraphs (A) through (E)." *Id.* § 4022(e)(2).  Putting aside the merits for now, these cited statutory provisions expressly govern prototype OTs, which are non-procurement actions for the reasons set forth above.  Any alleged violation of these statutory provisions cannot be in connection with a procurement or proposed procurement, because these provisions do not govern procurements.  *See Cleveland Assets, LLC v. United States*, 883 F.3d 1378, 1381-82 (Fed. Cir. 2018) (holding that this Court did not possess bid protest jurisdiction under section 1491(b)(1) to entertain a claim for violation of an appropriations statute, explaining that the Tucker Act does not grant jurisdiction over "statutory and regulatory violations" that are only "tangentially related to a government procurement"), *petition for panel reh'g and reh'g en banc denied*, 897 F.3d 1332, 1333 (Fed. Cir. 2018) (declining to adopt the dissenting view of a small minority of judges that a violation of *any* statute during the conduct of a procurement or proposed procurement is sufficient to trigger bid protest jurisdiction under section 1491(b)(1)); *Progress for Bakersfield Veterans, LLC v. United States*, 158 Fed. Cl. 574, 579-80 (2022) (dismissing for lack of jurisdiction bid protest claims related to alleged violations of statutes that "'say[] nothing of how [the agency] must run its procurement'") (quoting *Cleveland Assets*, 883 F.3d at 1382).

      D.     This Court's Decision In *Telesto* Further Supports Dismissal Of These Protests

In *Telesto Group, LLC v. United States*, 176 Fed. Cl. 711 (2025), the Court most recently had occasion to consider DOD's OT statute and the proper scope of bid protest jurisdiction under

- 24 -

28 U.S.C. § 1491(b)(1).  The protestor had challenged (1) whether the Army followed the OT statute; and (2) whether the Army's evaluations during an OT prototype phase were arbitrary and capricious.  The Court held that it possessed jurisdiction to entertain the first type of claim but dismissed the second type of claim for lack of subject matter jurisdiction.  *Id.* at 733-34.  In reaching this conclusion, the Court construed its bid protest jurisdiction somewhat broader than we have argued, but even under that broader view, the Court still does not possess jurisdiction in this case to review challenges to Navy technical evaluations during the OT prototype phase.

Accepting the main thrust of our arguments, the Court in *Telesto* stated that "[t]he import of *Hymas* is clear:  the Court of Federal Claims may not exercise jurisdiction over any complaint that does not concern a procurement."  *Telesto*, 176 Fed. Cl. at 731.  The Court added that the prototype OT at issue was "not itself a procurement or proposed procurement, although it contemplated the award of a separate follow-on production contract if the prototype process produced a successful outcome," because a "'follow-on production contract is materially distinguishable from … the OT prototype phase.'"  *Id.* at 733-34 (quoting *Rough Terrain*, 172 Fed. Cl. at 258).  Rather than conclude that the Court does not possess jurisdiction over OTs at all – regardless of the potential for a follow-on production contract, as we have argued – the Court in *Telesto* found that "an OT should, at some point in the process, be treated as a procurement for purposes of … jurisdiction."  *Id.* at 732-33.

Specifically, *Telesto* holds that an OT becomes "one 'in connection with a … proposed procurement' once the [military] [has] *completed* the prototyping process and [has] determined both that the process was *successful* and that it would acquire the successful prototype through a follow-on production contract."  *Telesto*, 176 Fed. Cl. at 733 (emphasis supplied).  "When those elements are met, the OT becomes a proposed procurement subject to being protested in this

[C]ourt under section 1491(b)(1)." *Id.* (cleaned up).  However, "[c]hallenges to an agency's

conduct of an OT … do not fall within the protest jurisdiction of the Court of Federal Claims

until the prototyping phase is concluded, and the agency decides to proceed with a proposed

procurement." *Id.*  The Court reasoned that a decision to allow an OT awardee "to continue to

work toward the award of an eventual production contract that may exist in the future is *far* from

the 'proposed award or the award of a contract' provided in section 1491(b)(1)'s grant of

jurisdiction." *Id.* at 734 (emphasis supplied).  The Court concluded that "there is no authority to

review an agency's conduct of the prototyping phase or the agency's evaluations of the

participant's performance at various stages of that phase." *Id.*

Accordingly, the Court dismissed the protestor's claims about technical evaluations

during the prototype phase for lack of jurisdiction.  *Telesto*, 176 Fed. Cl. at 720, 746.  *Telesto*

aptly described the prototype phase as a time when "there is an effective jurisdictional blackout"

in this Court. *Id.* at 733.  However, because the Army had determined that a prototype OT

awardee was *successful* and that the Army *would* acquire the successful prototype through a

follow-on production contract, the Court exercised jurisdiction to review a narrow claim – one

that is not present here – as to whether the Army had complied with the requirement in 10 U.S.C.

§ 4022(f)(2) for follow-on production contracts to use competitive procedures.[7] *Id.* at 740.  On

the merits of that claim, the Court held that the protestor had waived the claim under *Blue &*

_____

[7] Saildrone cites 10 U.S.C. § 4022(f) in passing in its complaint.  Saildrone Am. Compl. ¶ 147 (alleging that the Navy's "flawed exclusion of Saildrone has undermined … the competitive predicate for *any* follow-on production contract or transaction awarded without further competition under 10 U.S.C. § 4022(f).") (emphasis supplied).  That statutory provision provides that follow-on productions may be conducted using a further OT or a procurement contract "without the use of competitive procedures," if (A) "competitive procedures were used for the selection of parties" for the prototype OT, *and* (B) the participants "successfully completed the prototype project."  10 U.S.C. § 4022(f)(2).  Saildrone does not (and cannot) allege that the Navy has violated section 4022(f)(2) at this preliminary stage of prototype testing.

*Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007), and its progeny, and further held in the alternative that the Army's "revisions and changes" to the evaluation criteria during the prototype phase did not "eliminate competitive procedures" for purposes of the follow-on production contract. *Id.* at 740-42.

Even under the Court's somewhat broader view of its bid protest jurisdiction in *Telesto*, the Court in this case still would not possess jurisdiction to review plaintiffs' challenges to Navy technical evaluations during the prototype phase. At this early stage in the prototype process, the Navy has not yet determined that any prototype is successful, and the Navy has not yet commenced a follow-on production to acquire a successful prototype, even though the Navy may prefer to do so if a prototype proves successful. The Navy also has not yet reached that juncture when the Navy would have to choose between transacting authorities – using a FAR-based procurement contract or a follow-on production OT – for any follow-on production or potential acquisition of any successful prototype. The Navy has not even decided whether to acquire any MUSVs at all or to use a services model. AR 257-58. Put simply, the Navy has not procured or acquired *anything* at this point; the OTs at issue provide for prototype testing only. AR 251-52. Under these circumstances, a proposed procurement does not exist under *Telesto*, and plaintiffs do not allege a violation of a statute or regulation in connection with a proposed procurement in any event. Rather, the claims asserted by plaintiffs pertain to Navy technical evaluations during the prototype phase – these are the same type of claims that were dismissed for lack of jurisdiction in *Telesto*.

    E.    <u>Other Decisions By This Court Are Unpersuasive And Inconsistent With *Hymas*</u>

In its complaint, Blue Water cites several of this Court's decisions that pre-date *Telesto*. Blue Water Am. Compl. ¶¶ 16, 18 (citing *Raytheon Co. v. United States*, 175 Fed. Cl. 281

- 27 -

(2025); *Rough Terrain*, 172 Fed. Cl. 250; *Hydraulics Int'l Inc. v. United States*, 161 Fed. Cl. 167

(2022)).  These prior decisions are unpersuasive, *Telesto* properly declined to follow their flawed

reasoning, and this Court should not follow them either.

The jurisdictional analysis in *Raytheon* and *Rough Terrain* has a glaring flaw.  These

cases relied upon a presumption of judicial review to find jurisdiction in this Court under 28

U.S.C. § 1491*(b)(1)*, *Raytheon*, 175 Fed. Cl. at 290-91; *Rough Terrain*, 172 Fed. Cl. at 257, but

that presumption should have had no application in those cases, and it has no relevance here.  To

be clear, the Government has not argued that judicial review of non-procurement protests is

unavailable.  Rather, judicial review of protests concerning non-procurements exists in two fora:

(1) in this Court under 28 U.S.C. § 1491*(a)(1)*, with relief limited to proposal preparation costs,[8]

and (2) in a United States District Court under the Administrative Procedure Act (APA), with

injunctive relief available.[9]  *See Res. Conservation*, 597 F.3d at 1246 n.12 (stating that "a

---

[8] Plaintiffs in this case have not invoked bid protest jurisdiction under section 1491(a)(1), presumably because equitable relief is not available under section 1491(a)(1) and any relief would be limited to bid preparation costs.  *United States v. King*, 395 U.S. 1, 3-4 (1969) (relief under § 1491(a)(1) limited to money damages and equitable relief not available); *Safeguard Base Ops., LLC v. United States*, 989 F.3d 1326, 1343 (Fed. Cir. 2021) (recognizing bid and proposal preparation costs are "the relief historically associated with implied contract bid protest claims").  Since 1996, the Court has retained bid protest jurisdiction under section 1491*(a)(1)*'s implied-in-fact breach of contract theory in *non-procurement* cases, whereas jurisdiction under section 1491*(b)(1)* is "exclusive where 1491(b)(1) provide[s] a remedy (in procurement cases)."  *Res. Conservation*, 597 F.3d at 1246; *see also Tender Years Learning Corp. v. United States*, 134 Fed. Cl. 336, 344 (2017) (adjudicating merits of bid protest of non-procurement grant under § 1491*(a)(1)* for bid preparation costs); *Eco Tour Adventures, Inc. v. United States*, 114 Fed. Cl. 6, 40-42 (2013) (awarding bid preparation costs in a bid protest of a non-procurement concession contract under § 1491*(a)(1)*, holding that injunctive and declaratory relief was not available).

[9] In *Raytheon*, the Court cited *MD Helicopters Inc. v. United States*, 435 F. Supp. 3d 1003, 1006-07 (D. Ariz. 2020), in which the district court held that it did not possess jurisdiction to review an OT, even though the plaintiff *and* the Government had argued that jurisdiction existed in that case.  We respectfully submit that *MD Helicopters* was wrongly decided.  *See Res. Conservation*, 597 F.3d at 1246 n.12; *Space Exploration Techs. Corp. v. United States*, No. 2:19-cv-07927, 2020 U.S. Dist. LEXIS 245693, 2020 WL 7344615 (C.D. Cal. Sept. 24, 2020) (adjudicating the merits of APA claims in bid protest regarding OT agreement); *see also Protect*

- 28 -

disappointed bidder in a non-procurement case could also theoretically bring its bid protest

challenge in a federal district court, since the [1996 amendments to the Tucker Act] only

repealed [district court] jurisdiction over procurement cases"); *Telesto*, 176 Fed. Cl. at 729

(correctly framing the issue as "whether judicial review is available in the Court of Federal

Claims as a protest or in a district court under the" APA); *Space Exploration Techs. Corp. v.*

*United States*, No. 2:19-cv-07927, 2020 U.S. Dist. LEXIS 245693, 2020 WL 7344615 (C.D. Cal.

Sept. 24, 2020) (district court adjudicating the merits of APA claims in bid protest regarding

non-procurement OT).  By relying upon an inapplicable presumption of judicial review,

*Raytheon* and *Rough Terrain* effectively relieved those plaintiffs of their well-established burden

of proving bid protest jurisdiction in a non-procurement action.  *See Hymas*, 810 F.3d at 1317.

The jurisdictional analysis in *Raytheon* and *Hydraulics* is flawed for an additional reason.

These cases recognized that "OTs in general 'are not procurements.'"  *Raytheon*, 175 Fed. Cl. at

292 (quoting *Hydraulics*, 161 Fed. Cl. at 176); *accord Rough Terrain*, 172 Fed. Cl. at 258.

Nevertheless, *Raytheon* and *Hydraulics* essentially found that every prototype OT with a

possibility of a follow-on production is "in connection with a … proposed procurement" because

it involves a process of determining the military's need for the item in question within the

meaning of 41 U.S.C. § 111.  *Raytheon*, 175 Fed. Cl. at 292-93 (discussing *Hydraulics*, 161 Fed.

Cl. at 176-77).  *Hymas* rejected similarly expansive logic that would have rendered "nearly all

cooperative agreements" procurements for purposes of bid protest jurisdiction under the Tucker

Act.  *Hymas*, 810 F.3d at 1328.  Disregarding the central teaching of *Hymas*, the Courts in

*Raytheon* and *Hydraulics* elevated the expansive definition of procurement in 41 U.S.C. § 111

---

*Lake Pleasant LLC v. McDonald*, 609 F. Supp. 2d 895, 904-05, 910-15 (D. Ariz. 2009) (holding
district court possessed jurisdiction to entertain APA claim in bid protest regarding non-
procurement concession contract).

and denigrated the separate but interrelated OT statute, creating disharmony, rather than "concinnity," between the Tucker Act and the OT statute. *Hymas*, 810 F.3d at 1327 (courts "*must respect the concinnity* between the separate yet interrelated statutes that Congress has enacted" and should not "rely solely upon 41 U.S.C. § 111" when construing the proper scope of bid protest jurisdiction under 28 U.S.C. § 1491(b)(1)) (emphasis supplied).

The reasoning of *Rough Terrain* suffers from the same flaw, although *Rough Terrain* involved different facts that involved a follow-on production OT, not a prototype OT. In *Rough Terrain*, the Court held that a protest of a follow-on production OT was in connection with a procurement or proposed procurement, notwithstanding that the agency had selected an OT rather than a procurement contract for that follow-on production. *Rough Terrain*, 172 Fed. Cl. 260. In this regard, the holdings of *Rough Terrain* and *Telesto* are similar. *Telesto*, 176 Fed. Cl. at 733 (holding that an OT becomes "one 'in connection with a … proposed procurement' once the [military] [has] completed the prototyping process and [has] determined both that the process was successful and that it would acquire the successful prototype through a follow-on production contract"). For the sake of completeness, we respectfully submit that the holdings of *Rough Terrain* and *Telesto* construed this Court's jurisdiction too broadly because a *follow-on production OT* is still a non-procurement OT – not a procurement or proposed procurement – but the Court need not resolve that question because this case involves *prototype OTs*.

Until the Federal Circuit provides more guidance, we understand the Court must continue to grapple with the OT jurisdiction issue. *See Telesto*, 176 Fed. Cl. at 735-36 ("Admittedly, there is at present no [de]finitive answer to the jurisdictional puzzle presented by protests of OTs … , and judges of this court will need to await guidance from the Federal Circuit."). That question has produced several different views among several different judges of this Court, and

- 30 -

we respectfully submit that the Court should weigh the persuasive value of prior decisions carefully before following any of them in this case. *See Telesto*, 176 Fed. Cl. at 733 (respectfully stating the Court's analysis "departs modestly from the holdings in" *Raytheon* and *Hydraulics*).

CONCLUSION

For these reasons, we respectfully request that the Court dismiss the complaints for lack of subject matter jurisdiction.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

CORINNE A. NIOSI
Assistant Director

Of Counsel:

| | |
|---|---|
| | s/ Douglas Edelschick |
| GWENDOLYN IACI | DOUGLAS G. EDELSCHICK |
| Supervisory Associate Counsel | Senior Trial Counsel |
| EMILY RUBINO | NATALEE A. ALLENBAUGH |
| Attorney Advisor | Trial Attorney |
| BENJAMIN DEARDEN | Commercial Litigation Branch |
| Attorney Advisor | Department of Justice |
| NAVSEA Office of Counsel | P.O. Box 480, Ben Franklin Station |
| 1333 Isaac Hull Avenue, Bldg 197 | Washington, DC 20044 |
| Washington Navy Yard, D.C. 20376 | Tel:  (202) 353-9303 |

August 10, 2026                    Attorneys for Defendant United States